**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---

```
------------------------------------------------------- X
In re:                                    :   Chapter 11
                                          :
NanoMech, Inc.                            :   Case No. 19- 10851(CSS)
                                          :
                          Debtor.         :
                                          :   RE: D.I. 10
------------------------------------------------------- X
```

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTOR AND DEBTOR IN POSSESSION TO OBTAIN POST PETITION FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING SENIOR LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO PRE PETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtor and debtor in possession (collectively, the "Debtor") pursuant to §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), and 364(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), *inter alia* seeking, among other things:

(1)     Authorization for the Debtor to obtain post petition financing pursuant to the terms and conditions of the Loan Documents (as defined in the Senior Secured Debtor In Possession Term Credit and Security Agreement (hereinafter referred to as the "Agreement")*by and among the Debtor and Michaelson Capital Special Finance Fund II L.P., individually and as

---

*     Capitalized terms used herein and not otherwise defined herein shall have the same meanings ascribed in the Agreement.

collateral agent ("Agent" and "DIP Lender", and as hereinafter referred to in this Order as the "Post Petition Lender"), a copy of which is attached hereto as **Exhibit 1**, and in accordance with this Order ("Final Order"), secured by a perfected senior priority security interests in and liens on the Collateral (as that term is defined in the Agreement) pursuant to §§ 364(c)(2) and 364(c)(3), and 364(d) of the Bankruptcy Code (subject only to the Permitted Encumbrances or otherwise set forth herein (as defined in the Agreement));

(2)    Authorization for the Debtor to remit on an ongoing basis during the pendency of this Case any and all collections of any nature or description, including but not limited to, Collateral proceeds, asset proceeds and payments to the Agent ("Collections") for application or deemed application, first to the Pre Petition Note Purchase Obligations (as this term is defined in the Agreement) until such Pre Petition Note Purchase Obligations are fully repaid and thereafter to the repayment of all Obligations (as defined in the Agreement and hereafter referred to in this Order as the Post Petition Obligations);

(3)    Subordinating any and all liens and claims of Michaelson individually and as collateral agent for the Prepetition Note Purchasers (as these terms are defined in the Agreement and hereafter referred to as "Pre Petition Lenders") to the liens and claims granted to the Agent for the benefit of the Post Petition Lender;

(4)    Authorization to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to the Post Petition Lender with respect to any and all Loans (as defined in the Agreement) which are advanced by the Post Petition Lender subsequent to the Petition Date pursuant to the Loan Documents and granting a subordinate and limited super priority administrative claim status to the Pre Petition Lenders on account of their Prepetition

2

Note Purchase Obligations (hereinafter defined as the "Pre Petition Obligations") as adequate protection);

(5)     Authorization to provide adequate protection to the Pre Petition Lenders;

(6)     Authorization to waive the Debtor's and unsecured creditors rights to assert claims to surcharge either the Prepetition Note Purchase Collateral (as hereinafter referred to as the "Pre Petition Collateral") or Collateral (as defined in the Agreement) arising after the Petition Date (hereinafter referred to as the "Post Petition Collateral") pursuant to § 506(c) of the Bankruptcy Code;

(7)     Authorization to modify the automatic stay imposed by § 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order to the extent hereinafter set forth;

and

(8)     Related relief.

Hearings on the Motion having been held by this Court on April 18, 2019 (the "Interim Hearing") and May 10, 2019 (the "Final Hearing"), and upon the record made by the Debtor at the Interim Hearing and the Final Hearing, including the Motion, the declaration and testimony of Benjamin Waisbren, the Debtor's Chief Restructuring Officer, in Support of the Motion and the filings and pleadings in the above-captioned Chapter 11 Case (the "Case") and the Court having found that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties in interest; and appropriate notice of the Motion, the relief requested therein, and the Interim and Final Hearing (the "Notice") was appropriate under the circumstances; and the Notice having been served by the Debtor in accordance with Bankruptcy Rule 4001 on (i) counsel to Michaelson Capital Special Finance Fund II, L.P.; (ii) the office of

the United States Trustee (the "U.S. Trustee"), (v) the holders of the thirty (30) largest unsecured claims, on a consolidated basis, against the Debtor' estates (the "30 Largest Unsecured Creditors"), (vi) the Internal Revenue Service and applicable state taxing authorities, (vii) all parties which, to the best of the Debtor's knowledge, information, and belief, have asserted or may assert a lien in any of the Debtor' assets; and (viii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; collectively, the "Noticed Parties") and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and after due deliberation sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition.  On April 15, 2019, (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its businesses and manage its properties as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

B.    Disposition.  The Motion is hereby granted in accordance with the terms of this Final Order.

C.    Jurisdiction and Venue.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M).  Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    Notice.  Notice was given in the manner described in the Motion. The Interim hearing was held pursuant to Bankruptcy Rule 4001(C)(2) and the Final Hearing was held with appropriate notice being provided to all parties in interest.  Under the circumstances,

and as immediate and irreparable loss would be caused to the estate if immediate financing were not obtained, the parties to which notice was given and the manner of notice was the best available under the circumstances and constitutes due and sufficient notice.

      E.      <u>Stipulations Between the Debtor, the Post Petition Lender and the Pre Petition Lenders</u>.   Without prejudice to the rights of any creditors' committee that may be appointed in this Case under §1102 of the Bankruptcy Code (the "<u>Committee</u>") or other parties-in-interest as and to the extent set forth in Section 4.1 of this Interim Order, the Debtor admits, stipulates, acknowledges and agrees that:

      (i)      <u>Prepetition Note Purchase Documents</u>.   Prior to the commencement of the Case, the Pre Petition Lenders made loans and advances and provided other financial accommodations to the Debtor pursuant to the terms and conditions set forth in the Pre Petition Note Purchase Documents.   Copies of the operative Pre Petition Note Purchase Documents are on file with counsel to the Debtor and available upon reasonable request.

      (ii)      <u>Prepetition Obligations</u>.   As of Petition Date, the outstanding Prepetition Obligations due to the Pre Petition Lenders was not less than the principal sum not less than $10,782,234.00 consisting of principal in the amount of $10,143,577 plus interest, fees and cost accrued and accruing thereon, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto.   Subject only to the rights of a Committee or party in interest, as provided for in Section 4.1 of this Order and the terms of this Interim Order, the Pre Petition Obligations reflected above constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Debtor, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and Debtor does not possess, shall not assert,

hereby forever releases, and is forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre Petition Obligations or liens and security interest securing the same described in clause (E)(iii) below.

(iii)    Pre Petition Collateral.    As of the Petition Date, the Pre Petition Obligations were secured pursuant to the Prepetition Note Purchase Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by Debtor to the Pre Petition Lenders and the Prepetition Note Purchase Collateral Agent under the Pre Petition Note Purchase Documents, upon all of the Pre Petition Note Purchase Collateral, subject only to the liens specifically permitted under the Prepetition Note Purchase Documents to the extent that such security interests, liens or encumbrances were (1) valid, perfected and non-avoidable security interests, liens or encumbrances existing as of the Petition Date, and (2) senior to and have not been or are not subject to being subordinated to Pre Petition Lenders' or the Prepetition Note Purchase Collateral Agent's liens on and security interests in the Pre Petition Collateral under the Prepetition Note Purchase Documents or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior and outstanding (hereinafter referred to as the "Permitted Liens").  The Debtor does not possess and will not assert any claims, counterclaims, setoffs or defenses of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre Petition Lenders' or the Prepetition Note Purchase Collateral Agent's liens, claims or security interests in the Pre Petition Collateral.

(iv)    Proof of Claim.    The acknowledgment by the Debtor of the Pre Petition Obligations, set forth above, and the liens, rights, priorities and protections granted to or

in favor of Pre Petition Lenders and the Prepetition Note Purchase Collateral Agent in respect of the Pre Petition Collateral as set forth herein and in the Prepetition Note Purchase Documents shall be deemed a timely filed proof of claim on behalf of Pre Petition Lenders in this Case.

F.      Findings Regarding the Post Petition Financing.

(i)    Post Petition Financing.  The Debtor has requested from each of the Agent and the Post Petition Lender, and the Agent and Post Petition Lender are willing, to extend certain Loans (as this term is defined in the Loan Documents), advances and other financial accommodations on the terms and conditions set forth in the Interim Order, this Final Order and the Loan Documents, respectively.

(ii)    Need for Post Petition Financing.  The Debtor does not have sufficient available sources of working capital, including cash collateral, to operate its business in the ordinary course of business without the financing requested in the Motion to maximize the value of the assets of the Estate (as defined below) for the benefit of the creditors of the Debtor without post petition financing.  The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post petition financing arrangements with the Agent and Post Petition Lender, as set forth in this Final Order and the Loan Documents, is vital to the preservation and maintenance of the going concern value of Debtor.  Accordingly, the Debtor has an immediate need to obtain post petition financing in order to, among other things, permit the orderly continuation of the operation of its businesses, minimize the disruption of its business operations, and preserve and maximize the value of the assets of the Debtor's bankruptcy estate (as defined under § 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Estate.

5659939.5

(iii)      <u>No Credit Available on More Favorable Terms</u>.  The Debtor is unable to procure post petition financing in the form of unsecured credit allowable as an administrative expense under §§ 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense or junior liens on encumbered property of the Estate, or liens on property of the Estate not subject to existing liens pursuant to § 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code.  Furthermore, Debtor is not able to procure the necessary financing on terms more favorable than the financing offered by the Agent and Post Petition Lender pursuant to the Loan Documents.

(iv)      <u>Budget</u>.  The Debtor has prepared and delivered to Agent a thirteen-week budget (as defined in the Agreement, the "<u>Budget</u>").  This Budget has been reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements of the Debtor for the periods covered thereby.  The Debtor represents that it believes the Budget is achievable in accordance with the terms of the Loan Documents and this Final Order and will allow the Debtor to operate at all times during the Case.  The Agent and DIP Lender are relying upon the Debtor's compliance with the Budget (subject to the variances permitted under Section [7.15(a)] of the Agreement (the "<u>Permitted Variances</u>") and the Interim and Final Order in determining to enter into the post petition financing provided for herein.

(v)      <u>Business Judgment and Good Faith Pursuant to § 364(e)</u>.  The extension of credit under the Loan Documents and the Interim and Final Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor-in-possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the Loan Documents and the Interim and Final Order have been

8

negotiated in good faith and at arms' length by and among the Debtor and Agent, with all parties being represented by counsel. Any credit extended under the terms of the Interim and Final Order shall be deemed to have been extended in "good faith" by the Agent and Post Petition Lender, as that term is used in § 364(e) of the Bankruptcy Code.

(vi)     Good Cause. The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to: (1) minimize disruption to the Debtor's business and ongoing operations, (2) preserve and maximize the value of the Debtor's Estate for the benefit of the Debtor's creditors, and (3) avoid immediate and irreparable harm to the Debtor, its creditors, its business, its employees, and its assets.

(vii)     Immediate Entry. Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2). Any objections to the entry of the Final Order  (to the extent such objections have not been withdrawn, waived, resolved, or settled) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED THAT:

Section 1.     Authorization and Conditions to Financing.

1.1     Motion Granted.     The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this FinalOrder.

1.2     Authorization to Borrow and Use Loan Proceeds. Debtor is hereby authorized and empowered to immediately borrow, obtain Loans, and to incur indebtedness and other Post Petition Obligations, plus all interest, costs, and fees, accrued or accruing

pursuant to the terms of the Loan Documents and to the terms and conditions of this Final Order  in sum not to exceed $850,000.00.  Subject to the terms and conditions contained in this Final Order, Debtor shall use the proceeds of the Loans, and other credit and financial accommodations provided by Agent and Post Petition Lender under the Loan Documents solely for the payment of the expenses set forth in the Budget and the amounts owing to Agent and Post Petition Lender in accordance with the terms and conditions of the Loan Documents and this Final Order.

1.3    <u>Financing Documents</u>.

(a)    <u>Authorization</u>.  Debtor is hereby authorized to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the Loan Documents.  Upon execution and delivery of the Loan Documents, such agreements shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of such Loan Documents and this Final Order.  Subject only to Section 4.1 of the Order, no obligation, payment, transfer or grant of security under the Loan Documents or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under § 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

(b)    <u>Approval; Evidence of Borrowing Arrangements</u>.    All terms, conditions and covenants set forth in the Loan Documents are approved to the extent necessary to implement the terms and provisions of this Final Order.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among Debtor, Agent and Post Petition Lender, and (b) Debtor's assumption and adoption of all

of the terms, conditions, and covenants of any of the Loan Documents, for all purposes, including, without limitation, to the extent applicable, the payment of all Post Petition Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of Agent's and Post Petition Lender's consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the Loan Documents; provided that payment of Agent's and Post Petition Lender's consultant fees, professional fees, attorney fees and legal expenses shall be made only in accordance with Section 5.11 of this FinalOrder.

      1.4    <u>Payment of Pre Petition Obligations</u>.  Subject only to paragraph 4.1 herein, the Debtor is authorized to repay all Pre Petition Obligations in accordance with the Loan Documents, the Prepetition Note Purchase Documents and this Final Order.

      1.5    <u>Payments and Application of Payments</u>.  The Debtor is authorized to make all payments and transfers of Estate property to the Agent as provided for, permitted and/or required under any of the Loan Documents which payments and transfers shall not be avoidable or recoverable from the Agent or the Post Petition Lender under §§ 547, 548, 550, 553 or any other sections of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  Subject to only paragraph 4.1 herein, all proceeds of the Pre Petition Collateral or Post Petition Collateral of any nature or description received by the Debtor, Agent or the Post Petition Lender, and any other amounts or payments of any nature or description received by the Debtor, Agent or the Post Petition Lender in respect of the Pre Petition Obligations or Post Petition Obligations, shall be applied or deemed to be applied first to the repayment in full of the Pre Petition Obligations, and then in repayment of the Post Petition Obligations.

Without limiting the generality of the foregoing, the Debtor is authorized without further order of this Court to pay or reimburse Agent and the Post Petition Lender for all reasonable and documented costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the Agent or the Post Petition Lender in connection with the financing transactions as provided for in the Loan Documents, all of which shall be and are included as part of the principal amount of the Post Petition Obligations and secured by the Pre Petition Collateral and Post Petition Collateral. Any and all funds that exist in the Debtor's accounts or are due to the Debtor at the conclusion of the Budget Period which represents receipts in excess of the budgeted disbursement shall be paid by the Debtor to the Post Petition Lender without offset, counterclaim or defense.  Prior to the payment of any of these fees the Debtor shall first give counsel to the Committee and the U.S. Trustee ten (10) days written notice of any invoice or statement requesting the payment of professional fees, consulting fees or legal fees and applicable expenses for services provided to the Agent and/or the Post Petition Lender.  If during this notice period no objection is received or filed with the Court, these obligations shall be immediately paid by the Debtor.

      1.6    <u>Continuation of Pre Petition Procedures</u>.  Except to the extent expressly set forth in the Loan Documents, all pre petition practices and procedures for the payment and collection of the proceeds of the Pre Petition Collateral, the turnover of cash, the delivery of Collections or property of any nature or description to the Agent and the Post Petition Lender, including any control agreements and any other similar lockbox or blocked depository bank account arrangements, are hereby approved and shall continue without interruption after the commencement of the Case.

Section 2.      <u>Post Petition Lien; Superpriority Administrative Claim Status</u>.

        2.1      <u>Post Petition Lien</u>.

<u>Post Petition Lien Granting</u>.  To secure repayment and performance of any and all Post Petition Obligations of the Debtor to the Agent and Post Petition Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, Agent, for the benefit of itself and the Post Petition Lender, shall have and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate have in the Pre Petition Collateral (but subject to the Permitted Liens), in and upon all of the Debtor's right title and interest in the Pre Petition Collateral and Post Petition Collateral.  For the avoidance of doubt, this Order shall not be determinative of any claims, interests, liens or priorities in the proceeds of the Specified D&O Policy (as that term is defined in the Agreement) or any other business and management indemnity policies or directors and officers liability policies which name the Debtor as a named insured or beneficiary or in any non-Debtor claims against or covered by such policies.  Nothing granted hereby shall affect or impair any non-Debtor's claims against or covered by such policies.  Nothing granted hereby shall affect or impair any non-Debtor's rights and recovery under such policies.   <u>Lien Priority in Collateral</u>.  The liens and security interests of Agent and Post Petition Lender granted under the Loan Documents and this Final Order in the Post Petition Collateral and Pre Petition Collateral securing all Post Petition Obligations shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted under the Prepetition Note Purchase Documents or in favor of any third parties in conjunction with §§ 363, 364 or any other sections of the Bankruptcy Code or other applicable law; provided, however, that Agent's and Post Petition Lender's liens on and security interests in the Pre Petition Collateral and Post Petition Collateral shall be subject only to Permitted Liens.   By way of further clarification, the Liens granted hereunder do not intend to

prime the lien (to the extent, validity and priority of such lien) of secured creditor Arvest Bank with respect to Arvest Bank's lien the on the real property located at 2447 Technology Way, Springdale, AR 72764 (Mortgage recorded with the Circuit Clerk of Washington County, Arkansas on 12/20/2013 at Doc. ID 015531040012, File 2013-00041062). Nor do the Liens granted hereunder intend to prime the lien (to extent, validity and/or priority of such lien) of secured creditor Arvest Bank with respect to Arvest Bank's lien encumbering the Isuzu motor vehicle displaying VIN #JALC4W169A700286. The Liens of Arvest are Permitted Liens to the extent of their pre-petition validity and priority (this Order makes no determination as to the extent, validity and priority of the Arvest Permitted Liens).  In addition,

(a)

(b)     Post Petition Lien Perfection. This Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post petition liens and security interests granted herein (the "Post Petition Liens"), effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, acknowledgement, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) or other depository account consisting of Collateral (a "Perfection Act").  Notwithstanding the foregoing, if Agent, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then Agent is authorized to perform such act, and the Debtor is authorized to perform such act to the extent necessary or required by Agent, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Final Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law. Agent may choose to file, record or present a certified copy of this Final Order in the same

manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Final Order in accordance with applicable law.  Should Agent so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post petition liens and security interests granted herein by virtue of the entry of this Final Order.

2.2     Superpriority Administrative Expenses.

(a)     DIP Loans.

(1)     For all Post Petition Obligations now existing or hereafter arising pursuant to the Interim and Final Orders, the Loan Documents or otherwise, Agent, for the benefit of itself and the other Post Petition Lender, is granted an allowed superpriority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor, whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, §§ 105, 326, 328, 330, 331,503(b),506(c) (subject to entry of the Final Order), 507(a), 507(b), 364(c)(1), 546(c), 726,1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all Pre Petition Collateral and Post Petition Collateral of the Debtor and all proceeds thereof (the "DIP Superpriority Claim").

(2)     The Pre Petition Lenders are hereby granted a DIP Superpriority Claim, junior only to the Post Petition Lenders on account of their Pre Petition Obligations limited to the amount of the Post Petition Obligations.

2.3     Carve-Out

(a) As used in the Interim Order and this Final Order, the "Carve Out" means the sum of: (i) all allowed administrative expenses pursuant to 28 U.S.C. Sec. 156(c) for fees required to be paid to the Clerk of the Bankruptcy Court and pursuant to 28 U.S.C. 1930(a)(6) for fees payable to the U.S. Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate, as determined by agreement of the U.S. Trustee or by final order of the Bankruptcy Court (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses

up to $10,000 incurred by a trustee under Section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (ii) below; (iii) all fees, disbursements, costs and expenses of the professionals retained by the Debtor or any Committee pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code (the "Professionals") to the extend allowed by the Bankruptcy Court at any time, whether by interim order, procedural order, or otherwise, less the amount of any fee retainers receive by the Professionals and not previously applied to the fees and expenses of the Professionals (the "Pre-Trigger Allowed Professional Fees") incurred by such Professionals at any time before or on the date of delivery by the Agent of a Carve-Out Trigger Notice (the "Pre-Trigger Date Professional Fee Carve Out"); provided that the Pre-Trigger Date Professional Fee Carve Out (A) shall not at any time exceed the sum of $250,000 for counsel for the Debtor and the sum of $50,000 for Counsel to the Committee covering the period of time through (but not after) the date of delivery of a Carve-Out Trigger Notice and (B) shall be permanently reduced

16

by any amounts received by the Professionals after the Petition Date in payment of the Pre-Trigger Allowed Professional Fees; and (iv) all fees, disbursements, costs and expenses of the Professionals to the extent allowed by the Bankruptcy Court, whether by interim order, procedural order or otherwise, incurred on and after the first Business Day following delivery by the Agent of a Carve Out Trigger Notice (the "Post Trigger Allowed Professional Fees", and together with the Pre-Trigger Allowed Professional Fees , collectively the "Allowed Professional Fees") in an aggregate amount not to exceed $35,000 (the "Post-Trigger Date Professional Fee Carve-Out" and together with the Pre-Trigger Date Professional Fee Carve Out, collectively the "Professional Fee Carve-Out"). Agent and Lender shall establish a reserve with respect to the Carve-Out obligations provided for under this paragraph which reserve shall be held solely for the benefit of the fees and expenses provided for in this paragraph (the "Reserve"), it being understood that this Reserve will be funded at the end of the week in which the Carve Out obligations are incurred and will terminate upon an Event of Default und any of the Loan Documents. For the avoidance of doubt nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.

(b) Payment of Carve-Out. Payment from the Carve-Out, whether by or on behalf of the Agent or Lender shall not be deemed to reduce the Post Petition Obligations and shall not be deemed to subordinate any of Agent's or Lenders liens and security interest in the Collateral, the Adequate Protection Super Priority Claim (as defined herein), or the DIP Loan Super Priority Claim to any junior pre or post-petition lien, interest or claim in favor of any other party. Agent and Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees and disbursements of any Professionals incurred in connection with this Case under any Chapter of the Bankruptcy Code and nothing in this Final Order shall be

5659939.5

construed to obligate to Agent or Lender in any way, to directly pay compensation to or to reimburse expenses of any Professional, or to ensure the Debtor has sufficient funds to pay such compensation or reimbursement.

(c)    Excluded Professional Fees.    Notwithstanding anything to the contrary in this Final Order, the proceeds of Pre Petition Collateral and Post Petition Collateral or any Loans, or any other credit or financial accommodations provided under or in connection with the Loan Documents shall not be used to pay any professional fees or any other fees or expenses incurred by any professional in connection with any of the following:

(1)    an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, or enforceability of the Pre Petition Obligations or Post Petition Obligations or Pre Petition Lenders or Prepetition Note Purchase Collateral Agent's or Agent's and/or the Post Petition Lender's liens on perfection on and security interests in the Pre Petition Collateral or Post Petition Collateral or (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Pre Petition Obligations or the Post Petition Obligations and security interests in the Pre Petition Collateral or Post Petition Collateral, or (iii) preventing, hindering or delaying the Pre Petition Lenders, the prepetition Note Purchase Collateral Agent's, Agent's or the Post Petition Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Pre Petition Collateral or Post Petition Collateral in accordance with the terms and conditions of the Loan Documents and this Final Order;

(2)      a request to use Cash Collateral (as such term is defined in § 363 of the Bankruptcy Code), except as set forth in the Loan Documents and this Final Order, without the prior written consent of Agent or Post Petition Lender in accordance with the terms and conditions of this Final Order;

(3)      a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to § 364(c) or § 364(d) of the Bankruptcy Code, other than as provided in the Loan Documents, and this Final Order, without the prior written consent of Agent or the Post Petition Lender;

(4)      the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against the Pre Petition Lenders, the Prepetition Note Purchase Collateral Agent, the Agent, the Post Petition Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from the Pre Petition Lenders Agent or the Post Petition Lender under chapter 5 of the Bankruptcy Code; or

(5)      any act which has or could directly, materially and adversely modify or compromise the rights and remedies of Agent or the Post Petition Lender under this Final Order, or which directly results in the occurrence of an Event of Default under (and as defined in) the Loan Documents, or this Final Order.

2.4      <u>Use of Cash Collateral; Adequate Protection</u>.

(a)      <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, the  Loan Documents and in accordance with the Budget (subject to the Permitted Variances), Debtor shall be and is hereby authorized to use the Cash Collateral

(as defined in § 363 of the Bankruptcy Code) for the period commencing on the date of this Final Order and terminating upon the earlier of (i) the date that is the final day of the Financing Period (as defined below); or (ii) the date on which the Agent delivers an Enforcement Notice (as defined below) to counsel for the Debtor, counsel for the Committee (if appointed), and the U.S. Trustee; provided, however, that during the Default Notice Period (as defined below), the Debtor may use Cash Collateral solely to meet payroll (other than severance), or as may be agreed upon by the Agent in its discretion (collectively, the "Default Notice Period Expenses").  Nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its Estate outside the ordinary course of business, or the Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order, the Loan Documents and in accordance with the Budget.

(b)    Replacement Liens.  As adequate protection for the diminution in value of their interest in the Pre Petition Collateral (including Cash Collateral) on account of the Debtor's use of such Pre Petition Collateral (including Cash Collateral), the subordination of the Pre Petition Lenders' and Prepetition Note Purchase Collateral Agent's priority lien status as provided for in this Final Order, and the imposition of the automatic stay (collectively, the "Diminution in Value"), the Pre Petition Lenders and Prepetition Note Purchase Collateral Agent, are hereby granted pursuant to §§ 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in the Collateral (the "Replacement Liens"), and a super priority administrative claim pursuant to § 364(c)(1) of the Bankruptcy Code junior and subordinate only to the DIP Superpriority Claim.  The Replacement Liens shall be junior and subordinate only to the Permitted Liens, and Agent's and Post Petition Lender's liens on the Pre Petition Collateral

20

and Post Petition Collateral, and shall otherwise be senior to all other security interests in, liens

on, or claims against any of the Post Petition Collateral and the Pre Petition Collateral.

        (c)        Section 507(b) Priority Claims.  As additional adequate protection

for the Diminution in Value referenced above, the Pre Petition Lenders and Prepetition Note

Purchase Collateral Agent, are hereby granted as and to the extent provided by § 507(b) of the

Bankruptcy Code, an allowed superpriority administrative expense claim in this Case and any

successor bankruptcy case (the "Adequate Protection Superpriority Claim").  The Adequate

Protection Superpriority Claim shall be junior only to the DIP Superpriority Claim, and shall

otherwise have priority over all administrative expense claims and unsecured claims against

Debtor and its Estate now existing or hereafter arising, of any kind or nature whatsoever.

Section 3.        Default; Rights and Remedies; Relief from Stay.

        3.1        Events of Default.  The occurrence of any of the following events shall

constitute an "Event of Default" under this Final Order:  (a) the Debtor's failure to perform,

in any respect, its obligations under this Final Order; or (b) an "Event of Default" under  the

Loan Documents.

        3.2        Rights and Remedies upon Event of Default.  Upon the occurrence of

and during the continuance of any Event of Default, (a) the Debtor shall be bound by all

restrictions, prohibitions and other terms as provided in this Final Order and the Loan

Documents, and (b) the Agent and the Post Petition Lender shall be entitled to take any act or

exercise any right or remedy (subject to Section 3.4 below) as provided in this Final Order or

the Loan Document, as applicable, including, without limitation, declaring all Post Petition

Obligations immediately due and payable, accelerating the Post Petition Obligations, ceasing

to extend Loans on behalf of Debtor, setting off any Post Petition Obligations with Pre

Petition Collateral or Post Petition Collateral or proceeds in Agent's possession, and

enforcing any and all rights with respect to the Pre Petition Collateral and Post Petition Collateral.  Agent and Post Petition Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default.

        3.3     <u>Expiration of Commitment</u>.  Upon the expiration of Debtor's authority to borrow and obtain other credit accommodations from Agent and the Post Petition Lender pursuant to the terms of this Final Order or any of the Loan Documents (except if such authority shall be extended with the prior written consent of Agent, which consent shall not be implied or construed from any action, inaction or acquiescence by Agent or the Post Petition Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this FinalOrder, all of the Post Petition Obligations shall immediately become due and payable and Agent and Post Petition Lender shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to Debtor or permit the use of Cash Collateral, subject to the conditions set forth in Section 2.3(a) of this Final Order.

        3.4     <u>Modification of Automatic Stay</u>.  The automatic stay provisions of § 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit Agent and Post Petition Lender to perform any act authorized or permitted under or by virtue of this FinalOrder or the Loan Documents, as applicable, including, without limitation, (a) to implement the post petition financing arrangements authorized by this Final Order and pursuant to the terms of the Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien,

security interest, right or claim in the Collateral, (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Post Petition Obligations, as applicable, including, without limitation, all interests, fees, costs and expenses permitted under the Loan Documents and apply such payments to the Pre Petition Obligation or Post Petition Obligations pursuant to any of the Loan Documents and/or this Final Order, as applicable, and (d) immediately following the expiration of the Default Notice Period (as defined herein), to take any action and exercise all rights and remedies provided to it by this Final Order, the Loan Documents or applicable law other than those rights and remedies against the Pre Petition Collateral or Post Petition Collateral as provided in the following sentence. In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days (the "Default Notice Period") prior written notice of the Default (the "Enforcement Notice") to (i) counsel for the Debtor, (ii) counsel for the Committee (if appointed), and (iii) the U.S. Trustee, the Agent, acting on behalf of itself and the Post Petition Lender, shall be entitled to take any action and exercise all rights and remedies provided to it by this Final Order, the Loan Documents or applicable law that Agent may deem appropriate in its sole discretion to proceed against and realize upon the Pre Petition Collateral or Post Petition Collateral or any other assets or properties of Debtor's Estate upon which the Agent, for the benefit of itself and the applicable Post Petition Lender, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Post Petition Obligations. Notwithstanding anything to the contrary, any action that Agent is otherwise permitted to take pursuant to this Final Order to (i) terminate the commitments under the Loan Documents, (ii) accelerate the Loans, (iii) liquidate in a commercially reasonable manner (iv) send blocking notices or activation

notices pursuant to the terms of any control agreement, and (v) repay any amounts owing in respect of the Post Petition Obligations (including, without limitation, fees, indemnities and expense reimbursements) and, in each case, shall not require any advance notice to the Debtor.  In any hearing regarding any exercise of rights or remedies (which hearing must take place within the Default Notice Period), the only issue that may be raised by the Debtor in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtor shall not be entitled to seek relief, including, without limitation, under §  105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Agent or the Post Petition Lender set forth in this Final Order or the Loan Documents.

Section 4.        Representations; Covenants; and Waivers.

4.1        Objections to Pre Petition Obligations.  Notwithstanding anything to the contrary in this Final Order, any action, claim, defense, complaint, motion or other written opposition (hereinafter, an "Objection") that seeks to object to, challenge, contest or otherwise invalidate or reduce, whether by setoff, recoupment, counterclaim, deduction, disgorgement or claim of any kind: (a) the existence, validity or amount of the Pre Petition Obligations as of the Petition Date, or (b) the extent, legality, validity, perfection or enforceability of the Pre Petition Lender's or Prepetition Note Purchase Collateral Agent's pre petition liens and security interests in the Pre Petition Collateral shall be properly filed with the Court (x) by any Committee or any party in interest with requisite standing within seventy-five (75) calendar days from the date of the entry of the Interim Order or the entry of an order confirming the sale of all, or substantially all of the Debtor's assets, whichever comes first; provided, however, that nothing herein shall permit any party to challenge the extent or validity of the Post Petition Liens and the Post Petition Obligations.  If any such

Objection is timely and properly filed and a final, non-appealable order is entered by a court of competent jurisdiction sustaining and ordering some or all of the relief requested in such Objection, nothing in the Interim and Final Orders shall prevent the Court from granting appropriate relief with respect to the Pre Petition Obligations or Agent's or Post Petition Lender's liens on the Pre Petition Collateral, including, without limitation, with respect to Sections E, 1.3, 1.4, 1.5, 1.6, 2.5, 4.5, 5.6, and 5.11 of the Interim and Final Orders.  If no Objection is timely and properly filed, or if an Objection is timely and properly filed but denied, (i) the Pre Petition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, deduction or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and Agent's and Post Petition Lender's liens on and security interest in the Pre Petition Collateral shall be deemed valid, perfected, enforceable, and non-avoidable for all purposes and enjoy a first and senior priority, subject to Permitted Liens, and (ii) the Agent and the Post Petition Lender, and each of their respective officers, directors, employees, attorneys, professionals, successors, and assigns (each in their respective capacities as such) shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the Prepetition Note Purchase Documents and shall not be subject to any further objection or challenge relating thereto or arising therefrom by any party at any time.  Nothing contained in this Section 4.1 or otherwise shall or shall be deemed or construed to impair, prejudice or waive any rights, claims or protections afforded to Agent or the Post Petition Lender in connection with all Loans, and any other post petition financial and credit accommodations provided by Agent and the Post Petition Lender to Debtor in reliance on § 364(e) of the Bankruptcy Code and in accordance with the terms and provisions of this Final Order and any of the Loan

Documents.

        4.2     <u>Debtor's Waivers</u>.  Upon entry of this Final Order, at all times during the Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to seek further authority (a) to use the Cash Collateral of Agent and Post Petition Lender under § 363 of the Bankruptcy Code, (b) to obtain post petition loans or other financial accommodations pursuant to §§ 364(c) or 364(d) of the Bankruptcy Code, other than as provided in the Interim Order or the Final Order or as may be otherwise expressly permitted pursuant to any of the Loan Documents, (c) to challenge the application of any payments authorized by the Interim and Final Orders as pursuant to § 506(b) of the Bankruptcy Code, or to assert that the value of the Pre Petition Collateral is less than the Pre Petition Obligations, (d) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Post Petition Obligations (other than unmatured indemnity obligations for which claims have not been asserted) on the effective date of such plan in accordance with the terms and conditions set forth in any of the Loan Documents or (e) to seek relief under the Bankruptcy Code, including without limitation, under § 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Agent or the Post Petition Lender as provided in the Final Order and/or the Loan Documents or Agent's or any Post Petition Lender's exercise of such rights or remedies (other than to object to the exercise of the rights and remedies within the Default Notice Period on the grounds set forth in Section 3.4 of this Final Order); <u>provided</u>, <u>however</u>, that Agent may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by Agent or the Post Petition Lender.

4.3     Section 506(c) Claims.  Upon entry of this  Final Order, no costs or expenses of administration which have or may be incurred in the Case shall be charged against Agent or the Post Petition Lender, the Prepetition Note Purchase Collateral Agent or the Pre Petition Lenders, their respective claims or the collateral pursuant to § 506(c) of the Bankruptcy Code without the prior written consent of Agent, and no such consent shall be implied from any other action, inaction or acquiescence by Agent or the Post Petition Lender.

4.4     Collateral Rights.  Until all Post Petition Obligations and Pre Petition Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Loan Documents:

(a)     no other party shall foreclose or otherwise seek to enforce any junior lien or claim in Collateral; and

(b)     upon and after the declaration of the occurrence of an Event of Default and subject to Agent obtaining relief from the automatic stay as provided for herein to enforce its rights and remedies against the Pre Petition Collateral or Post Petition Collateral, in connection with a liquidation of any of the Pre Petition Collateral or Post Petition Collateral, Agent (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to: (i) upon reasonable notice under the circumstance enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in their businesses.  Agent and the Post Petition Lender will be responsible for the payment of

5659939.5

any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Agent actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that Agent actually occupies or uses such assets or properties or for any fees, rentals or other amounts that may become due following the end of Agent's occupation or use).

    4.5  <u>Releases</u>.

    Subject only to the rights of the Committee or any party in interest to file a timely Objection as provided at Section 4.1 herein; in  consideration of the Loans being made by the Agent and Post Petition Lender to the Debtor pursuant to the provisions of the Loan Documents and the Interim and Final Orders, Debtor on behalf of itself and its successors and assigns, (the "<u>Releasor</u>"), shall, forever release, discharge and acquit the Pre Petition Lender and the Prepetition Note Purchase Collateral Agent and their respective successors and assigns, and their present and former shareholders, partners, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in their respective capacities as such (collectively, the "<u>Pre Petition Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasor had, have or hereafter can or may have against Pre Petition Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Pre Petition Obligations, the Prepetition Note Purchase Documents and any Loans or other financial accommodations made by Pre Petition Lenders to Debtor pursuant to any of the Prepetition Note Purchase Documents.  In addition, upon the

repayment of all Post Petition Obligations owed to the Agent and the Post Petition Lender by the Debtor and termination of the rights and obligations arising under the Loan Documents (which payment and termination shall be on terms and conditions acceptable to the Agent), the Agent and the Post Petition Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Loan Documents, this Interim Order or the Final Order.

Section 5.      Other Rights and Post Petition Obligations.

5.1      No Modification or Stay of This Final Order.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Order, the Loan Documents or any term hereunder or thereunder, , or (b) the dismissal or conversion of this Case (each, a "Subject Event"), (x) the acts taken by the Agent and the Post Petition Lender in accordance with this Final Order, and (y) the Post Petition Obligations incurred or arising prior to Agent's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of the Interim and Final Orders, and the acts taken by Agent and Post Petition Lender in accordance with the Interim and Final Orders, and the liens granted to Agent and Post Petition Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Agent and each Post Petition Lender pursuant to the Interim and Final Orders and any of the Loan Documents shall remain valid and in full force and effect pursuant to§ 364(e) of the Bankruptcy Code.  For purposes of the Interim and Final Orders, the term "appeal", as used in § 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating the Interim and Final Order by this Court or any other tribunal.

5.2      Power to Waive Rights; Duties to Third Parties.  Agent and Post

Petition Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in the Interim Order and the Final Order that are in favor of Agent and Post Petition Lender (the "DIP Lender Rights"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, the DIP Lender Right(s).  Any waiver by Agent of the DIP Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce the DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject Agent or the Post Petition Lender to any liability to any other party, nor cause or enable any party other than the Debtor to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Agent or the Post Petition Lender.

5.3     Disposition of Collateral.    Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, other than pursuant to the terms of the Loan Documents and the Budget, without the prior written consent of Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the Agent or the Post Petition Lender) and, in each case, an order of this Court.

5.4     Inventory.    Debtor shall not, without the consent of the Agent and Post Petition Lender, (a) enter into any agreement to return any inventory to any of their creditors for application against any pre petition indebtedness under any applicable provision of § 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre petition indebtedness based upon any such return pursuant to § 553(b)(1) of the Bankruptcy Code or otherwise.

5.5     Reservation of Rights.    The terms, conditions and provisions of this Final Order are in addition to and without prejudice to the rights of Agent and each Post

5659939.5

Petition Lender to pursue any and all rights and remedies under the Bankruptcy Code, the Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Estate.

5.6     Binding Effect.

(a)     The provisions of this Final Order and the Loan Documents, the Post Petition Obligations, the Adequate Protection Superpriority Claim, the DIP Loan Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of each of the Agent, the Prepetition Note Purchase Collateral Agent, and the Post Petition Lender and the Pre Petition Lenders provided or acknowledged in this Final Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting this Case to any other chapter under the Bankruptcy Code, or dismissing this Case.

(b)     Any order dismissing this Case under § 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that (a) the DIP Superpriority Claim and Agent's and Post Petition Lender's liens on and security interests in the Collateral and all other claims, liens, adequate protections

and other rights granted pursuant to the terms of th Interim and Final Orders shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and the Commitments are terminated and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)     In the event this Court modifies any of the provisions of this Final Order or the Loan Documents following a Final Hearing, such modifications shall not affect the rights or priorities of Agent, the Prepetition Note Purchase Collateral Agent, the Post Petition Lender and the Pre Petition Lender pursuant to this Final Order with respect to the Collateral or any portion of the Obligations which arises or is incurred or is advanced prior to such modifications, and this Final Order shall otherwise remain in full force and effect to such extent.

(d)     This Final Order shall be binding upon Debtor, all parties in interest in this Case and their respective successors and assigns, including any trustee or other fiduciary appointed in this Case or any subsequently converted bankruptcy case of Debtor.  This Final Order shall also inure to the benefit of the Debtor, the Agent, the Prepetition Note Purchase Collateral Agent, the Post Petition Lender and the Pre Petition Lenders and each of their respective successors and assigns.

5.7     Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment.

All Loans and other financial accommodations under the Loan Documents are made in reliance on this Final Order and there shall not at any time be entered in this Case, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (a)

authorizes the use of cash collateral of Debtor in which the Agent, the Prepetition Note Purchase Collateral Agent, the Post Petition Lender or the Pre Petition Lenders have an interest, or the sale, lease, or other disposition of property of the Debtor's Estate in which the Agent, the Prepetition Note Purchase Collateral Agent and the Post Petition Lender or Pre Petition Lenders have a lien or security interest, except as expressly permitted hereunder or in the Loan Documents, or (b) authorizes under § 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Agent or the Post Petition Lender hold a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the Agent, other than the Carve Out,  the Prepetition Note Purchase Collateral Agent, the Post Petition Lender and the Pre Petition Lenders herein; unless, in each instance (x) Agent shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by the Agent, the Prepetition Note Purchase Collateral Agent, the Post Petition Lender or the Pre Petition Lender, or (y) such other order requires that all Post Petition Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of any of the Loan Documents (other than unmatured indemnity obligations for which claims have not been asserted), including, without limitation, all debts and obligations of Debtor to the Agent, the Prepetition

5659939.5

Note Purchase Collateral Agent, the Post Petition Lender or the Pre Petition Lender which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to the Agent and the Prepetition Note Purchase Collateral Agent and Pre Petition Lenders.  The security interests and liens granted to or for the benefit of the Agent, the Post Petition Lender, the Prepetition Note Purchase Collateral Agent and the Pre Petition Lenders hereunder and the rights of the Agent, the Prepetition Note Purchase Collateral Agent, the Post Petition Lender and Prep Petition Lenders pursuant to this Interim Order and the Loan Documents with respect to the Post Petition Obligations and Pre Petition Obligations, the Pre Petition Collateral and the Post Petition Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtor, unless Agent and Post Petition Lender shall expressly consent in writing that the Post Petition Obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

5.8     No Owner/Operator Liability.  Subject to the entry of the Final Order granting such relief, neither the Agent nor the Post Petition Lender shall be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq*., as amended, or any similar

federal or state statute) solely on the basis of having extended credit to the Debtor.

5.9    <u>Marshalling</u>.  Subject to entry of the Final Order granting such relief, in no event shall Agent or the Post Petition Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.  Agent and Post Lender shall be entitled to all of the rights and benefits of § 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, the "equities of the case" exception under § 552(b) of the Bankruptcy Code shall not apply to Agent or the Post Lender with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

5.10    <u>Right to Credit Bid</u>.  Agent, on behalf of itself and the Post Petition Lender, the Prepetition Note Purchase Collateral Agent, and the Pre Petition Lender, in order of priority, shall have the right to "credit bid", subject to Section 363(k) of the Bankruptcy Code, the amount of its and their liens that are Obligations arising under the terms of any of the Loan Documents or Pre Petition Obligations arising under the Prepetition Note Purchase Documents during any sale of all or substantially all of the Debtor's assets, including, without limitation, sales occurring pursuant to § 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under § 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

5.11    <u>Payment and Review of Lender Fees and Expenses</u>.  Debtor shall pay all fees, that may be reasonably required or necessary for the Debtor's performance of its obligations under the Loan Documents, including, without limitation, the non-refundable payment to the Agent and Post Petition Lender of the reasonable fees and expenses (including, without limitations, professional fees and legal fees and expenses) set forth in the Loan Documents whether incurred before or after the Petition Date; <u>provided</u>, that Debtor

shall pay all such reasonable fees and expenses within ten (10) business days of delivery of a statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained or be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments) to the Debtor, the U.S. Trustee and the Committee, unless, within such ten (10) business days of delivery of a statement or invoice for such fees and expenses, the Debtor, the U.S. Trustee or the Creditors' Committee (if any) serve a written objection upon the requesting party, in which case, the Debtor shall pay only such amounts that are not the subject of any objection and the withheld amount subsequently agreed by the parties or ordered by the Court to be paid.

5.12    Limited Effect.   In the event of a conflict between the terms and provisions of any of the Loan Documents and this Final Order, the terms and provisions of the Final Order shall govern, interpreted as most consistent with the terms and provisions of the Loan Documents.

5.13    Retention of Jurisdiction.   The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Order, the Agreement, and any of the Loan Documents.

**Dated: May 13th, 2019**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**

36

5659939.5