## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>NANOMECH, INC.,<br><br>Debtor.[1] | Chapter 11<br><br>Case. No. 19-10851 (JTD)<br><br>Related to Docket Nos. 37, 100, 197 and  241 |

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OF THE DEBTOR OUTSIDE THE ORDINARY COURSE OF BUSINESS, (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (D) GRANTING RELATED RELIEF**

Upon the Motion (the "Sale Motion") (D.I. 37) of the above captioned debtor and debtor-in-possession (the "Debtor") for, among other things, the entry of an order pursuant to §§ 105, 362, 363, 364, 365, and 541 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing the Debtor to: (a) enter into an asset purchase agreement with the party submitting the highest or best bid for the Debtor's assets in connection with the Debtor's sale and bidding process; (b) sell the Purchased Assets,[2] which include substantially all of the Debtor's assets, free and clear of all Liens (as used in this Order, the term "Liens" shall have the meaning ascribed to it below), with such sale to be

---

[1]   The last four digits of the Debtor's federal tax identification number are 3143. The Debtor's service address for the purpose of this chapter 11 case is: 2447 Technology Way, Springdale, AR 72764.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Asset Purchase Agreement (the "Agreement"), filed with this Bankruptcy Court (D.I. 197) and dated as of July 19, 2019, between NanoMech, Inc., Chapter 11 Debtor and Debtor-in-Possession and P&S Global Holdings LLC (the "Purchaser").

in accordance with the terms and conditions of the Agreement; (c) assume and sell and assign certain executory contracts and unexpired leases; and (d) granting related relief; and this Bankruptcy Court having entered an order on May 14, 2019 (D.I. 100), as modified by the order entered on July 17, 2019 (D.I. 197) (collectively, the "Bid Procedures Order") authorizing the Debtor to conduct, and approving the terms and conditions of, an auction (the "Auction"), if necessary, as set forth in the Bid Procedures Order to consider offers for the Purchased Assets, establishing a date for the Auction, and approving, among other things: (i) certain Bid Procedures to be used in connection with the sale of the Debtor's assets, including the establishment of a deadline for submission of competing bids and the Auction; (ii) the form and manner of notice of the Auction and Bid Procedures; and (iii) procedures relating to certain unexpired leases and executory contracts, including notice of proposed cure amounts; and this Bankruptcy Court having established the date of the hearing on the Sale Motion (the "Sale Hearing"); and the Debtor having determined that it was in the best interests of the Debtor's estate to seek approval of the Purchaser's bid for the Purchased Assets; and this Bankruptcy Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and in consideration of the Sale Motion, the relief requested therein, and the responses thereto being a core proceeding in accordance with 28 U.S.C. § 157(b); and the Sale Hearing having been held on July 23, 2019; and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing and all other pleadings and proceedings in this Bankruptcy Case, including (without limitation) the Sale Motion and the certificate of service regarding the Sale Motion (D.I. 40); and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtor, its

estate, its creditors, and its other stakeholders and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:**[3]

A.    **Bankruptcy Petition.** On April 15, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued in possession and management of its business and properties as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

B.    **Jurisdiction and Venue.** This Bankruptcy Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 over this matter and over the property of the Debtor's estate, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement. This matter is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of this Bankruptcy Case and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Findings of Fact and Conclusions of Law.** The findings and conclusions set forth herein constitute this Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.    **Final Order.** This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule

---

[3]    All findings of fact and conclusions of law announced by this Bankruptcy Court at the Sale Hearing in relation to the Sale Motion are incorporated herein to the extent not inconsistent herewith.

54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Bankruptcy Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein. Time is of the essence in consummating the sale. There is no credible basis for concluding that a delay in the sale of the Purchased Assets would result in a higher or better offer for the Purchased Assets than the offer reflected in the Agreement. In order to maximize the value of the Purchased Assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004(h) and 6006(d).

E.    **Statutory Predicates.** The statutory bases for the relief requested in the Sale Motion and for the approvals and authorizations herein are (i) Bankruptcy Code §§ 105, 362, 363, 364, 365, and 541, (ii) Bankruptcy Rules 2002, 4001, 6004, 6006, and 9014, and (iii) Local Rule 2002-1.

F.    **Notice.** As evidenced by the certificates of service filed with this Bankruptcy Court (including, without limitation, D.I. 40), proper, timely, adequate, and sufficient notice of the Sale Motion, the Bid Procedures, the Auction, the Sale Hearing and the Agreement, the sale of the Purchased Assets free and clear of all Liens has been provided in accordance with Bankruptcy Code § 363(b), Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, the Local Rules, the procedural due process requirements of the United States Constitution, and in compliance with the Bid Procedures Order. The Debtor also gave due and proper notice of the assumption, sale, and assignment of each contract or lease listed on Exhibit A to the *Amended Notice of Cure Amounts* (D.I. 151) (the "Contract Notice"), to each non-debtor party under each such contract or lease. Such notice was good and sufficient and appropriate under the particular circumstances. No other

or further notice of the Sale Motion, the Bid Procedures, the Auction, the Sale Hearing, the Agreement, the sale of the Purchased Assets free and clear of all Liens, the assumption and assignment of the Assumed Contracts, or of the entry of this Order is necessary or shall be required.

       G.      Notice and a reasonable opportunity to object and/or be heard regarding the Sale Motion, the Auction, the Sale Hearing, the Agreement, the sale of the Purchased Assets free and clear of all Liens, the assumption and assignment of the Assumed Contracts, and the entry of this Order have been provided to all interested Persons, including, without limitation (a) the Office of the United States Trustee for the District of Delaware; (b) all non-debtor parties to the Assumed Contracts; (c) all Persons who have asserted any Liens in or upon any of the Purchased Assets; (d) the Internal Revenue Service and all taxing authorities in each jurisdiction applicable to the Debtor; (e) the "Master Service List" established in this Bankruptcy Case; and (f) all Governmental Authorities exercising jurisdiction with respect to regulatory matters affecting or relating to the Purchased Assets.

       H.      **Title in the Purchased Assets.** The Purchased Assets are property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of Bankruptcy Code § 541(a). The Debtor is the sole and lawful owner of the Purchased Assets.

       I.      **Business Justification.** The Debtor has demonstrated a sufficient basis and the existence of reasonable and appropriate circumstances requiring them to enter into the Agreement, sell the Purchased Assets, and assume and assign the Assumed Contracts under Bankruptcy Code §§ 363 and 365, and such actions are appropriate exercises of the Debtor's business judgment, are consistent in all respects with the Debtor's fiduciary duties, and are in the best interests of the Debtor, its estate, its creditors, and its other stakeholders. Such circumstances include, but are not limited to, the fact that (i) there is a substantial risk of deterioration of the value of the Purchased

Assets if the sale is not consummated quickly given, among other reasons, that the Debtor's financing under the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtor and Debtor in Possession to Obtain Post Petition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Senior Liens and Super-Priority Claims, (IV) Granting Adequate Protection to Pre Petition Secured Lenders, (V) Modifying the Automatic Stay and (VI) Granting Related Relief* (D.I. 90) (the "DIP Order") matured on July 5, 2019, (ii) the Agreement and the Closing present the best opportunity to realize the value of the Purchased Assets on a going concern basis and to avoid a decline and devaluation of the Debtor's business, (iii) the Agreement constitutes the highest and best offer for the Purchased Assets, and (iv) unless the sale of the Purchased Assets is concluded expeditiously as provided for in the Sale Motion and the Agreement, the stakeholders' recoveries will likely be diminished.

J.      The terms and conditions of the Agreement, including the total consideration to be realized by the Debtor pursuant to the Agreement, are fair and reasonable, and are in the best interests of the Debtor's estate.

K.      **Opportunity to Bid.** The Bid Procedures were non-collusive, substantively and procedurally fair to all parties, and were the result of arm's length negotiations between the Debtor and the Purchaser. The Debtor and its professionals have complied, in good faith, in all respects with the Bid Procedures Order and the Bid Procedures. As demonstrated by the entire record in this Bankruptcy Case, including, without limitation, (i) the testimony and other evidence proffered or adduced at the Sale Hearing and the hearings held in this Bankruptcy Court on April 23, 2019 and July 17, 2019 to consider entry of the Bid Procedures Order and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale

process conducted in accordance with the Bid Procedures Order, the Debtor (a) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtor's assets, (b) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets, and (c) considered in good faith any bids submitted on or before the deadline to submit bids as set forth in the Bid Procedures.

L.    **Highest or Otherwise Best Offer.** The Bid Procedures obtained the highest value for the Purchased Assets for the Debtor and its estate that was reasonably obtainable under the circumstances of this Bankruptcy Case. As of the July 17, 2019 bid deadline, no higher or otherwise better offers for the Purchased Assets were received by the Debtor, and the Debtor determined, exercising its reasonable discretion and in accordance with the Bid Procedures, that the Purchaser was the successful bidder for the Purchased Assets. This determination constitutes a valid and sound exercise of the Debtor's business judgment. The Debtor, the Purchaser and their respective representatives have complied in all respects with the Bid Procedures and the Bid Procedures Order.

M.    The offer of the Purchaser, upon the terms and conditions set forth in the Agreement, and including the additional consideration of $300,000 payable by Purchaser to the Debtor's estate as part of the Purchaser's acquisition of Michaelson Capital Special Finance Fund II, L.P.'s ("Michaelson") claims against the Debtor (the "Carve Out") for the purpose of paying certain administrative and professional claims of the estate, including the form and total consideration to be realized by the Debtor and Debtor's estate pursuant to the Agreement, (i) is the highest and best offer received by the Debtor under the circumstances, (ii) is fair and reasonable, (iii) is in the best interests of the Debtor's creditors, stakeholders and estate, and (iv) constitutes

the value being offered for the Purchased Assets outside the ordinary course of the Debtor's business. In reaching this determination, this Bankruptcy Court has taken into account both the consideration to be realized directly by the Debtor, including the Purchaser's assumption by Purchaser of the Assumed Liabilities.

N.    **Good Faith Purchaser.** The Purchaser is a purchaser in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code § 363(m) with respect to all of the Purchased Assets. The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtor nor the Purchaser have engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of, or implicate, Bankruptcy Code § 363(n) to the Agreement and transfer of the Purchased Assets and Assumed Contracts to the Purchaser. The Purchaser is purchasing the Purchased Assets (including the Assumed Contracts) in good faith, is a good faith purchaser within the meaning of Bankruptcy Code § 363(m), is an assignee in good faith of the Assumed Contracts, and is, therefore, together with the Debtor, entitled to the protection of Bankruptcy Code § 363(m). Additionally, the Purchaser otherwise has proceeded in good faith in all respects in connection with this proceeding in that: (i) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets, (ii) the Purchaser complied with the Bid Procedures, (iii) all consideration to be paid by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the sale have been disclosed, (iv) the Purchaser has not violated Bankruptcy Code § 363(n) by any action or inaction, and (v) the negotiation and execution of the Agreement and any other agreements or instruments related thereto was in good faith. The Purchaser is not, and was not immediately prior to or after the Closing Date, an "affiliate" or

8

"insider" of the Debtor as defined in Bankruptcy Code § 101, and no common identity of incorporation, director, or stockholder existed between the Purchaser, on the one hand, and the Debtor, on the other hand, immediately prior to or after the Closing Date.

O.    **Injunction.** An injunction against creditors of the Debtor and third parties pursuing Liens, claims and Excluded Liabilities is necessary to induce the Purchaser to close the sale; the issuance of such an injunction is therefore necessary to avoid irreparable injury to the Debtor's estate, and will benefit all creditors of the Debtor. All persons having Liens of any kind or nature whatsoever against or in any of the Debtor or the Purchased Assets are and shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Liens (other than the Assumed Liabilities) against the Purchaser, any of its assets, property, successors or assigns, or the Purchased Assets.

P.    **Corporate Power and Authority.** The Debtor has full corporate and other power and authority to execute the Agreement (and all other documents contemplated thereby), and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate and other actions on the part of the Debtor. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtor to consummate the sale.

Q.    The Debtor has advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Purchased Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtor's business judgment to sell the Purchased Assets. Notwithstanding any requirement for approval or consent by any Person, the transfer of the Purchased Assets to the Purchaser and the assumption and assignment of the Assumed Contracts is a legal, valid, and effective transfer of the Purchased Assets (including the Assumed Contracts).

      R.     **Free and Clear.** The Purchased Assets shall be sold free and clear of any and all liens, claims (as used in this Order, the term "claims" shall have the definition set forth in the Bankruptcy Code), liabilities, encumbrances and interests of any kind or nature whatsoever including, without limitation, all liens, mechanics' liens, materialmen's liens, consensual liens, non-consensual liens, statutory liens, hypothecations, encumbrances, security interests, mortgages, security deeds, deeds of trust, debts, levies, indentures, pledges, restrictions (whether on voting, sale, transfer, disposition or otherwise), of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security devise, and (iii) any claim based on any theory that the Purchaser is a successor, successor-in-interest, continuation or a substantial continuation of the Debtor or the Debtor's business), reclamation claims, obligations, liabilities, demands, and guaranties, whether any of the foregoing are known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, secured or unsecured, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Bankruptcy Case, and whether imposed by agreement, understanding, Law, equity or otherwise, including claims otherwise arising under doctrines of successor liability, successor-in-interest liability, continuation liability or substantial continuation liability including, without limitation, that Purchaser is in any way a successor, successor-in-interest, continuation or substantial continuation of the Debtor or its business (collectively, the "Liens"), other than the Assumed Liabilities and Permitted Encumbrances. The Purchaser would not have entered into the Agreement, and would not have agreed to purchase and acquire the Purchased Assets, if the sale

of the Purchased Assets was not free and clear of any and all Liens (other than the Assumed Liabilities and Permitted Encumbrances), or if the Purchaser would, or in the future could, be liable for any such Liens.

S.      Not selling the Purchased Assets free and clear of all Liens (other than the Assumed Liabilities and the Permitted Encumbrances) would adversely impact the Debtor's estate, and the sale of Purchased Assets other than one free and clear of all Liens (other than the Assumed Liabilities and the Permitted Encumbrances) would be of substantially less value to the Debtor's estate.

T.      **Satisfaction of § 363(f) Standards.** The Debtor may sell the Purchased Assets free and clear of all Liens of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied. Those (i) holders of Liens in or with respect to the Purchased Assets and (ii) non-debtor parties to the Assumed Contracts, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2). All objections to the Sale Motion have been overruled or resolved. Those holders of Liens in or with respect to the Purchased Assets who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f).

U.      **Transfer of Assets.** The transfer of the Purchased Assets to the Purchaser will be a legal, valid, and effective transfer of the Purchased Assets and shall vest Purchaser with all right, title, and interest of the Debtor to the Purchased Assets free and clear of any and all Liens. Except as specifically provided in the Agreement or this Order, the Purchaser shall not assume or become liable for any Liens other than the Assumed Liabilities and the Permitted Encumbrances.

V.      **Cure/Adequate Assurance.** The Debtor and the Purchaser have, to the extent necessary, satisfied the requirements of Bankruptcy Code § 365, including Bankruptcy Code §§ 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assumed Contracts. The Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to Bankruptcy Code § 365(b)(1)(C). The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order are integral to the Agreement and are in the best interests of the Debtor, its estate, its creditors, its stakeholders and other parties in interest, and represent the exercise of sound and prudent business judgment by the Debtor.

W.      The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary. No monetary or non-monetary defaults exist in the Debtor's performance under the Assumed Contracts as of the date of this Order other than the failure to pay amounts equal to the Cure Costs or defaults that are not required to be cured as contemplated in Bankruptcy Code § 365(b)(1)(A). In accordance with the terms set forth in the Agreement and this Order, the Purchaser shall pay the Cure Costs for each of the Assumed Contracts.

X.      **No Successor Liability**. The sale of Purchased Assets to the Purchaser does not amount to or constitute a consolidation, merger, or *de facto* merger of the Purchaser and the Debtor or the Debtor's estate, there is not substantial continuity between the Purchaser and the Debtor or the Debtor's estate, there is no continuity of enterprise between the Purchaser and the Debtor or the Debtor's estate, the Purchaser is not a continuation or substantial continuation of the Debtor or its estate, and the Purchaser is not a successor or successor-in-interest to the Debtor or its estate. The Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" or similar theories.

Y.    **No Fraudulent Transfer.** The sale is not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the Laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtor nor the Purchaser has entered into the Agreement or is consummating the sale with any fraudulent or otherwise improper purpose.

Z.    **Fair Consideration.** The total consideration provided by the Purchaser for the Purchased Assets was the highest and best offer received by the Debtor, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable Laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

AA.    **Assumed Liabilities.** At and effective as of the Closing, the Purchaser shall assume sole responsibility for paying and satisfying the Assumed Liabilities as provided in the Agreement. For the avoidance of doubt, nothing in this Order (including, without limitation, any provisions in this Order regarding the sale, transfer or conveyance of the Purchased Assets free and clear of Liens) nor in the Agreement shall be construed to mean that the Purchaser is not assuming from the Debtor and thereafter becoming solely responsible for the payment, performance and discharge of the Assumed Liabilities as provided in the Agreement. After the Closing, the Debtor shall have no liability whatsoever with respect to the Assumed Liabilities. The Purchaser shall have no obligations or responsibility whatsoever with respect to any claims against the Debtor (including, without limitation, the Excluded Liabilities) other than the Assumed Liabilities.

BB.    **Compliance with Bankruptcy Code.** The consummation of the sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation Bankruptcy Code §§ 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f) and all of the applicable requirements of such sections have been or will be complied with in respect of the sale as of the Closing Date.

CC.    **Sub Rosa Plan.** The sale and assignment of the Purchased Assets and Assumed Liabilities outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan or plan of reorganization for the Debtor. The sale does not constitute a *sub rosa* chapter 11 plan.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Relief Granted.** Subject to the terms and conditions contained herein and compliance with Bankruptcy Code § 363(d)(1), the relief requested in the Sale Motion is granted in its entirety, and the Agreement and the provisions thereof relating to the Debtor owned Purchased Assets are approved in their entirety.

2.    **Objections Overruled.** All objections, responses, reservations of rights, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response, reservation of rights, or request for continuance was not otherwise withdrawn, waived, or settled, it is hereby overruled and denied on the merits.

3.    **Notice.** Notice of the matters before this Bankruptcy Court, including the Sale Motion, the Bid Procedures, the Auction, the Sale Hearing, the Agreement, the sale of the

Purchased Assets free and clear of all Liens, the assumption and assignment of the Assumed Contracts, and the proposed Cure Costs, was reasonable, fair and equitable under the circumstances and complied in all respects with Bankruptcy Code § 102(1), Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, and Local Rule 2002-1.

4.    **Prior Findings of Fact and Conclusions of Law.** This Bankruptcy Court's findings of fact and conclusions of law in the Bid Procedures Order, including the record of the hearings to approve the Bid Procedures Order, are incorporated herein by reference.

5.    **Approval.** The sale of the Purchased Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), are hereby authorized and approved in all respects. The Agreement (and all ancillary documents related thereto) are hereby approved and authorized in all respects and shall be deemed in full force and effect, and the Debtor and Purchaser are hereby authorized, empowered and directed to fully perform under, consummate, and implement the terms of the Agreement and to execute, deliver and perform under, any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement and this Order, including, without limitation, bills of sale, certificates, deeds, assignments, stock powers, transfers of membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Debtor or Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession any or all of the Purchased Assets, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Agreement, without any further corporate action or orders of this Bankruptcy Court.

6.    **Fair Consideration.** The sale of the Purchased Assets and the consideration provided by the Purchaser under the Agreement are fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code.

7.    **Good Faith Purchaser.** The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith purchaser under Bankruptcy Code § 363(m), including, without limitation, with respect to the transfer of the Assumed Contracts as part of the sale of the Purchased Assets pursuant to Bankruptcy Code § 365 and this Order. Pursuant to Bankruptcy Code § 363(m), if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer, or assignment under the Agreement or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal prior to the Closing Date), and notwithstanding any reversal, modification, or vacatur, any sale, transfer, or assignment shall be governed in all respects by the original provisions of this Order and the Agreement, as the case may be.

8.    **Bankruptcy Code § 363(n).** The sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to Bankruptcy Code § 363(n) or any other section of the Bankruptcy Code.

9.    **Authorization.** The Debtor shall be, and hereby is, authorized and directed to fully assume, perform under, consummate, and implement the terms of the Agreement together with any and all additional instruments and documents that may be necessary or desirable in connection with implementing and effectuating the terms of the Agreement, this Order, and/or the sale of the Purchased Assets including, without limitation, bills of sale, certificates, deeds, assignments, and

other instruments of transfer, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession, any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the Agreement, without any further corporate or other action or orders of this Bankruptcy Court.

10.     The Debtor and each other Person having duties or responsibilities under the Agreement, any agreements or instruments related thereto or this Order, and their respective directors, officers, employees, members, managers, partners, agents, representatives, and attorneys, are authorized, subject to the terms and conditions contained in the Agreement and this Order, to carry out all of the provisions of the Agreement and any related agreements or instruments; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement and any related agreements or instruments; to take any and all actions contemplated by the Agreement, any related agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, termination statements, indentures, mortgages, quitclaim deeds, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements or instruments and this Order, all without further application to, or order of, this Bankruptcy Court or further action by their respective directors, officers, employees, members, managers, partners, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, managers, partners, agents, representatives, and attorneys of such entities. The secretary or any assistant secretary of the

Debtor (or any comparable officer) shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtor is further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Authority any and all certificates, agreements, or amendments necessary or appropriate to effectuate this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable Laws of all applicable Governmental Authorities or as any of the officers of the Debtor may determine are necessary, desirable or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act. Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate Laws of the State of Delaware and all other applicable business, corporation, non-profit, limited liability partnership, trust, and other Laws of the applicable Governmental Authorities with respect to the implementation and consummation of the Agreement, any related agreements or instruments and this Order.

11.    **Valid Transfer.** Effective as of the Closing, and subject to applicable state Law, (a) the sale of the Purchased Assets by the Debtor to the Purchaser shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any Person and shall vest the Purchaser with good, valid and marketable title in and to the Purchased Assets, free and clear of any and all Liens of any kind or nature whatsoever (other than the Assumed Liabilities and Permitted Encumbrances) pursuant to Bankruptcy Code § 363(f), and (b) the assumption of the Assumed Liabilities by the Purchaser shall constitute a legal, valid and effective delegation and assignment of all Assumed Liabilities to the Purchaser and shall divest

18

the Debtor of all liability with respect to any Assumed Liabilities. Notwithstanding anything to the contrary in this Order or the Agreement, the sale of the Purchased Assets shall be subject to, and not be free and clear of, (i) any rights of existing licensees under executory contracts pursuant to which the Debtor is a licensor of rights to intellectual property as defined in Bankruptcy Code § 101 (each such agreement, an "IP Licensing Agreement") pending the Debtor's rejection or assumption of such agreements pursuant to Bankruptcy Code § 365 and (ii) any rights elected to be retained by a non-debtor counterparty to an IP Licensing Agreement pursuant to Bankruptcy Code § 365(n) after the Debtor's rejection of such IP Licensing Agreement pursuant to Bankruptcy Code § 365.

12.    All of the Debtor's interests in the Purchased Assets to be acquired by the Purchaser under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Purchaser. Upon the occurrence of the Closing, this Order shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets acquired by the Purchaser under the Agreement and/or a bill of sale, deed, or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

13.    **Free and Clear.** At the Closing, and subject to applicable state law, the Debtor shall be, and hereby is, authorized, empowered, and directed, pursuant to Bankruptcy Code §§ 105, 363(b), 363(f) and 365, to sell the Purchased Assets and to assume and assign the Assumed Contracts to the Purchaser. The sale of the Purchased Assets shall vest the Purchaser with all right, title and interest of the Debtor to the Purchased Assets free and clear of any and all Liens (other than the Assumed Liabilities and Permitted Encumbrances), with all such Liens to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have

in or against the Purchased Assets, subject to all claims and defenses the Debtor may possess with respect thereto. Following the Closing Date, no holder of any Liens in the Purchased Assets (other than the Assumed Liabilities and Permitted Encumbrances) shall interfere with the Purchaser's use and enjoyment of the Purchased Assets based on or related to such Liens, or any actions that the Debtor may take in this Bankruptcy Case. All Persons having Liens of any kind or nature whatsoever against or in the Debtor or the Purchased Assets are forever barred, estopped and permanently enjoined from pursuing or asserting any such Liens (other than the Assumed Liabilities and the Permitted Encumbrances) against the Purchaser, any of the Purchaser's assets, property, successors or assigns, or the Purchased Assets.

14.     The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens (other than the Assumed Liabilities and the Permitted Encumbrances) shall be self-executing, and neither the Debtor nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. However, the Debtor and the Purchaser, and each of their respective officers, employees, and agents, are hereby authorized to take all actions and to execute and deliver any and all documents and instruments that either the Debtor or the Purchaser deem necessary, desirable or appropriate to implement and effectuate the terms of the sale of the Purchased Assets and this Order.

15.     **Authorization to Creditors.** On or before the Closing Date, the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens of any kind against the Purchased Assets, as such Liens may have been recorded or may otherwise exist, and deliver such executed documents to the Debtor's counsel to be held in escrow. If any Person that has filed financing statements, mortgages or other

documents, instruments or agreements evidencing any Liens in or against the Purchased Assets shall not have delivered to the Debtor's counsel prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens that the Person has with respect to the Purchased Assets, the Debtor and the Debtor's officers are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to such Purchased Assets at Closing, and the Purchaser and the Purchaser's officers are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the Person with respect to such Purchased Assets after the Closing. In addition, after Closing, the Purchaser and the Debtor are authorized to file a copy of this Order in the appropriate real estate records, the secretary of state records and any other filing location selected by the Purchaser or the Debtor and, once filed, this Order shall constitute conclusive evidence of the release of all Liens from the Purchased Assets.

16.     On the Closing Date, each of the Debtor's creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Liens (other than the Permitted Liens and the Permitted Encumbrances) against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

17.     **No Successor Liability.** Except as expressly provided in the Agreement, the Purchaser is not assuming nor shall it or any affiliate of the Purchaser be in any way liable or responsible, as a successor, successor-in-interest, continuation, substantial continuation, or otherwise, for any claims, debts, or obligations of the Debtor in any way whatsoever relating to or arising from the Debtor's ownership or use of the Purchased Assets, or any claims or liabilities calculable by reference to the Debtor or its operations or the Purchased Assets, which liabilities,

claims, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor, successor-in-interest, continuation, substantial continuation, or otherwise, against the Purchaser or any affiliate of the Purchaser.

18.     The Purchaser is not a "successor," "successor-in-interest," "continuation," or "substantial continuation" to or of the Debtor or its estate by reason of any theory of Law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability, claim or obligation of any of the Debtor and/or its estate including, but not limited to, any bulk sales Law, successor liability, successor-in-interest liability, substantial continuation liability, or similar liability except to the extent expressly included in the Assumed Liabilities or provided in the Agreement. Neither the purchase of the Purchased Assets by the Purchaser, nor the fact that the Purchaser is using any of the Purchased Assets previously operated by the Debtor, will cause the Purchaser or any of its affiliates to be deemed a successor, successor-in-interest, continuation, or substantial continuation in any respect to the Debtor's business within the meaning of any foreign, federal, state or local revenue, pension, ERISA, COBRA Coverage, FMLA, WARN, Tax, labor, employment, environmental, or other Law, rule or regulation (including, without limitation, filing requirements under any such Laws, rules or regulations), or under any products liability Law or doctrine with respect to the Debtor's liability under such Law, rule or regulation or doctrine, except to the extent expressly included in the Assumed Liabilities or provided in the Agreement.

19.     **Direction to Surrender Possession or Control.** All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Purchased Assets are directed to surrender possession or control of the Purchased Assets to the Purchaser, as applicable, on the Closing Date or at such time thereafter as the Purchaser may request. Nothing herein shall

prejudice the rights of the Purchaser to seek turnover from any and all Persons presently in possession, or on or after the Closing Date in possession, of some or all of the Purchased Assets.

20.    **Licenses and Permits.** To the extent provided in the Agreement and available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any governmental authorization, rights granted in respect of Intellectual Property constituting part of the Purchased Assets, any other license, permit, registration, and any other governmental approval of the Debtor with respect to the Purchased Assets and the Executory Contracts, and all such licenses, permits, registrations, and governmental authorizations, Intellectual Property and any other approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date. To the extent any license or permit necessary for the operation of the business of the Debtor is determined not to be an executory contract assumable and assignable under Bankruptcy Code § 365, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date and the Debtor is hereby authorized and directed to cooperate with the Purchaser in connection with any such application as the Purchaser deems reasonably necessary or desirable, subject to the provisions of the Agreement.

21.    **Assumed Contracts/Cure Costs.** Subject to the terms of the Agreement and the occurrence of the Closing Date, the assumption by the Debtor of the Assumed Contracts and the sale and assignment of such agreements and unexpired leases to the Purchaser, as provided for or contemplated by the Agreement, be, and hereby are, authorized and approved pursuant to Bankruptcy Code §§ 363 and 365; provided, however, that on or before the Closing, the Purchaser shall be permitted (in Purchaser's sole discretion) to modify the list of Assumed Contracts to delete any contract, lease or other agreement, in which case the deleted item shall not be deemed an Assumed Contract and shall not be assumed and assigned to the Purchaser. The payment of the

Cure Costs by the Purchaser under the Agreement and this Order (a) cures all monetary defaults existing thereunder as of the assignment of the Assumed Contracts to the Purchaser in accordance with the terms of the Agreement; (b) compensates the applicable non-Debtor counterparties for any actual pecuniary loss resulting from such default; and (c) together with the assumption of the Assumed Contacts by the Debtor and the assignment of the Assumed Contracts to the Purchaser constitutes adequate assurance of future performance thereof.

22.     The Assumed Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtor and sold and assigned to the Purchaser at the Closing, pursuant to Bankruptcy Code §§ 363 and 365, subject only to the payment of the Cure Costs.

23.     Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365, the Purchaser shall be fully and irrevocably vested in all right, title, and interest in and to each Assumed Contract. The Debtor shall reasonably cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

24.     Pursuant to Bankruptcy Code §§ 365(b)(1)(A) and (B), subject to the Agreement, the Purchaser shall pay any undisputed Cure Costs within fifteen (15) days of the assignment of the Assumed Contracts. The Cure Costs are hereby fixed at the amounts set forth on the Contract Notice, and the non-debtor parties to the Assumed Contracts are forever bound by such Cure Costs. Notwithstanding anything to the contrary in this Order, from and after the Closing Date, Purchaser shall have both the benefits and the burdens under each Assumed Contract as of the Closing Date, including all payment obligations that have accrued as of the Closing Date but are not yet due under the terms of such Assumed Contract and/or are not otherwise incorporated in the relevant Cure Cost, which shall be paid according to the terms of such Assumed Contract.

25.    Subject to the terms of this Order, all defaults or other obligations under the Assumed Contracts arising prior to the Closing (without giving effect to any acceleration clauses, assignment fees, increases, advertising rates, or any other default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) shall be deemed cured by payment of the Cure Costs.

26.    Any provision in any Assumed Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtor is unenforceable, and all Assumed Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any. No sections or provisions of any Assumed Contract that purport to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor party to the Assumed Contract shall have any force and effect with respect to the assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code § 365(f) and/or are otherwise unenforceable under Bankruptcy Code § 365(e) and no assignment of any Assumed Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Assumed Contract. The non-debtor party to each Assumed Contract shall be deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the Purchaser shall enjoy all of the Debtor's rights and benefits under each such Assumed Contract as of the applicable date of assumption without the necessity of obtaining such non-debtor party's written consent to the assumption or assignment thereof.

27.    The Purchaser has satisfied all requirements under Bankruptcy Code §§ 365(b)(1)(C) and 365(f)(2)(b) to provide adequate assurance of future performance under the Assumed Contracts.

28.     The Debtor and its estate shall be relieved of any liability for any breach of any of the Assumed Contracts occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code § 365(k).

29.     Pursuant to Bankruptcy Code §§ 105(a), 363, and 365, all parties to the Assumed Contracts are forever barred and enjoined from raising or asserting against the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Contracts existing as of the Closing or arising by reason of the Closing, except for any amounts that are Assumed Liabilities being assumed by the Purchaser under the Agreement.

30.     **Authorization to Government Authorities.** Each and every federal, state, and local governmental agency or department (including each Governmental Authority) is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the sale of Purchased Assets contemplated by the Agreement and this Order. This Order and the Agreement shall govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of Law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets, and each such entity is hereby directed to accept this Order for recordation as conclusive evidence of the free, clear, and unencumbered transfer of title to the Purchased Assets conveyed to Purchaser pursuant to the Agreement. Notwithstanding anything herein to the contrary, Bankruptcy Code § 1146(a) does not apply to the transaction authorized herein.

31.     To the maximum extent permitted by Bankruptcy Code § 525, no Governmental Authority may revoke or suspend any license or permit relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of this Bankruptcy Case.

32.     **Excluded Assets and Liabilities.** The Purchaser has not assumed and is not otherwise obligated for any of the claims against the Debtor (including, without limitation, the Excluded Liabilities) other than the Assumed Liabilities as set forth in the Agreement, and the Purchaser has not purchased any of the Excluded Assets as set forth in the Agreement.

33.     **Injunction.** Except to the extent expressly included in the Assumed Liabilities, all persons and entities, including, but not limited to, the Debtor, employees, former employees, all debt security holders, equity holders, administrative agencies, governmental units (as defined in Bankruptcy Code § 101(27)), tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, and other parties in possession of any of the Purchased Assets at any time, trade creditors and all other creditors, holding any Liens, claims, or Excluded Liabilities of any kind or nature whatsoever against or in the Debtor or in the Debtor's interests in the Purchased Assets (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Debtor, the Purchased Assets, the Executory Contracts, the operation of the Debtor's business on or prior to the Closing Date, the sale, or the transfer of the Purchased Assets or the Executory Contracts to the Purchaser shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action,

claim or other proceeding of any kind, directly or indirectly, against the Purchaser or any of its affiliates, predecessors, successors, or assigns or any of their respective current and former members, managers, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Purchased Assets. In connection with the foregoing, actions that are barred hereby include, without limitation: (i) the commencement or continuation of any action or other proceeding (ii) the enforcement, attachment, collection, or recovery of any judgment, award, decree or order, (iii) the creation, perfection, or enforcement of any Lien, claim, interest, or encumbrance, except for Assumed Liabilities and Permitted Encumbrances, (iv) the assertion of any right of setoff, not asserted prepetition, or subrogation of any kind, (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Order, any actions contemplated or taken in respect hereof, or the Agreement, and (vi) the revocation, termination or failure or refusal to renew any governmental authorization or other license, permit, registration, or governmental authorization or approval to operate any of the Purchased Assets or conduct the businesses associated with such Purchased Assets. Following the Closing Date, no holder of a Lien on, in or against the Purchased Assets shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Lien, or any actions that the Debtor may take in the Debtor's case.

34.    **No Liability for Worker's Compensation.** Without limiting the generality of the foregoing, the Purchaser shall not assume or be obligated to pay, perform or otherwise discharge any workers' compensation debts, obligations, and liabilities of the Debtor arising pursuant to state Law or otherwise. This Order is intended to be all inclusive and shall encompass, but not be limited

to, workers' compensation claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation claims filed or to be filed, or reopenings of those claims, by or on behalf of any of the Debtor's current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Debtor relating in any way to workers' compensation liability.

35.    **No WARN or CERCLA Liability.** Except to the extent expressly included in the Assumed Liabilities or provided in the Agreement, the Purchaser and its affiliates shall have no liability, obligation, or responsibility under WARN or CERCLA, or any foreign, federal, state or local labor, employment, or environmental Law by virtue of the Purchaser's purchase of the Purchased Assets or assumption of the Assumed Liabilities.

36.    **Debtor's Release of Purchaser.** Subject to and upon the Closing, the Debtor hereby waives any and all actions related to, and hereby releases the Purchaser and its property, from any and all claims and causes of action relating to the sale of the Purchased Assets, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, except to the extent arising under, or specifically assumed or established under the Agreement or this Order.

37.    In consideration of the Purchaser's acquisition of the Purchased Assets pursuant to the provisions of the Agreement and this Order, the Debtor, on behalf of itself, anyone who may

bring a claim on its behalf (including derivative claims), and its successors and assigns, (collectively, the "Releasors"), hereby, forever releases, discharges and acquits the Purchaser, and each other holder of claims with respect to the Pre-Petition Term Obligations (as defined in the DIP Order), and their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, partners, members, managers, attorneys, employees and other representatives in their respective capacities as such, including, for the avoidance of doubt, any individual associated therewith that served as an officer or director of the Debtor (collectively, the "Pre-Petition Lien Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against any Pre-Petition Lien Releasee as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor or any subsidiary thereof, the Agreement, the NPA[4] and any other financial accommodations made by the Purchaser and/or any other Pre-Petition Lien Releasee to Debtor in connection with the Purchaser's acquisition of the Purchased Assets, including any action or omission of a Pre-Petition Lien Releasee in such person's capacity as an officer, director, employee or agent of, or advisor to, the Debtor or any subsidiary thereof. In addition, upon the Closing, the Purchaser and Pre-Petition Lien Releasees are hereby released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the NPA, the Agreement, or this Order.

38.     Subject to the terms of the Agreement, the Agreement and any related agreements and/or instruments may be waived, modified, amended, or supplemented by agreement of the

---

[4] NTD: Not defined.

Debtor and the Purchaser, without further action or order of this Bankruptcy Court; provided, however, that any such waiver, modification, amendment, or supplement is not materially adverse to the Debtor.

39.     **Failure to Include Provisions.** To the extent not inconsistent with this Order, and subject to applicable state Law and this Bankruptcy Court's jurisdiction, the failure to specifically include any particular provisions of the Agreement or any related agreements or instruments in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Bankruptcy Court, the Debtor, and the Purchaser that, subject to applicable state Law, the sale of the Purchased Assets is authorized and approved in accordance with this Order.

40.     **Environmental Laws.** Notwithstanding anything in paragraph 35 of this Order, nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the United States' enforcement of any liability under environmental Laws against the Purchaser or other future owner or operator as the current owner or operator of the Purchased Assets from and after the Closing Date.

41.     **Department of Defense Contract.** Notwithstanding any provision to the contrary in the Sale Motion, this Order, and any implementing Sale documents, nothing shall: (1) authorize the assumption, sale, assignment or other transfer to the Purchaser of any federal (i) grants, (ii) grant funds, (iii) contracts (including, but not limited to, Army Contract Command Contract No. W91CRB-16-C-0046), (iv) property, (v) leases, or (vi) agreements, (collectively, "Federal Interests") without compliance by the Debtors and the Purchaser with all terms of the Federal Interests and with all applicable non-bankruptcy law; (2) be interpreted to set cure amounts or to require the government to novate, approve or otherwise consent to the assumption, sale, assignment or other transfer of any Federal Interests; (3) affect the government's rights to offset

or recoup any amounts due under, or relating to, the Federal Interests, unless otherwise limited by Bankruptcy Code § 553; (4) waive any obligation of the Debtors or any Purchaser to comply with applicable legal requirements and approvals under any police or regulatory laws governing the transfer or assignment of, or compliance with, any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval; or (5) confer exclusive jurisdiction to the Bankruptcy Court with respect to the Federal Interests, except to the extent set forth in 28 U.S.C. Section 1334 (as limited by any other provisions of the United States Code). The Purchaser and the United States reserve all rights and defenses with respect to this paragraph.

42.    **Michaelson's Deficiency Claim.** The deficiency claim of Michaelson after the Closing Date and reassignment of the Purchaser's claims against the Debtor shall be in the amount of five million eighty eight thousand one hundred and thirteen dollars ($5,088,113.75) and seventy five cents (hereinafter "Deficiency Claim") and said sum is due and payable to Michaelson by the Debtor without off set, counter claim or defense.

43.    Michaelson's Deficiency Claim shall revest in Michaelson with the same collateral rights and claims in and to the Excluded Assets that Michaelson held immediately prior to the assignment of its claims and collateral rights to Purchaser.

44.    **No Bulk Sales; No Brokers.** No bulk sale Law or any similar Law of any state or other jurisdiction shall apply in any way to the sale of Purchased Assets contemplated by the Agreement. No brokers were involved in consummating the sale or the other such transactions, and no brokers' commissions are due to any person or entity in connection with the sale or the other such transactions. The Purchaser is not and will not become obligated to pay any fee or commission or like payment to any broker, finder, or financial advisor as a result of the

consummation of the sale or the other transactions based upon any arrangement made by or on behalf of the Debtor.

45.     **No Amendment of Agreement.** Nothing in this Order shall alter or amend the Agreement and the obligations of the Debtor and the Purchaser thereunder, except as expressly provided herein.

46.     **Binding Effect.** This Order and the Agreement shall be binding upon and govern the acts of all Persons including, without limitation, the Debtor, the Debtor's estate, the Purchaser, and each of their respective directors, officers, employees, agents, successors, and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtor's estate, any trustee appointed in a Chapter 7 case if this Bankruptcy Case is converted from Chapter 11, any Chapter 11 plan agent or trustee, liquidating agent or trustee, or any other agent or trustee charged with administering any assets of the Debtor or its estate, all creditors of the Debtor (whether known or unknown), any official committee of unsecured creditors and its professionals, holders of Liens in or with respect to the Purchased Assets.

47.     Nothing in any Order of this Bankruptcy Court or contained in any plan of reorganization or liquidation confirmed in this Bankruptcy Case, or in any subsequent or converted cases of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

48.     **Waiver of Stays.** The stays imposed by Bankruptcy Rules 6004(h), 6006(d), and 7062 are hereby waived, and this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any Person obtaining a stay pending appeal, the Debtor and the Purchaser are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any Person obtaining a stay pending appeal, if the

Debtor and the Purchaser close under the Agreement, the Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of this Order or any authorization contained herein is reversed or modified on appeal.

49.     The automatic stay provisions of Bankruptcy Code § 362 are vacated and modified to the extent necessary to implement the terms and conditions of the Agreement and the provisions of this Order, and the stay imposed by Bankruptcy Rule 4001(a)(3) is hereby waived with respect thereto.

50.     **No Sub Rosa Plan.** The sale of the Purchased Assets to the Purchaser outside of a plan of reorganization pursuant to the Agreement neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan or plan of reorganization of the Debtor. The Agreement does not constitute a *sub rosa* Chapter 11 plan.

51.     **Subsequent Plan Provisions.** Nothing contained in any chapter 11 plan confirmed in the Debtor's case or any order confirming any such plan or any other order in the Debtor's case (including any order entered after any conversion of this case into a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agreement or this Order and, to the extent of any such conflict, the terms of this Order and the Agreement shall control.

52.     **Further Assurances.** From time to time, as and when requested by the other, the Debtor and the Purchaser, as the case may be, shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the sale, including, such actions as may be necessary to vest, perfect or confirm, or

record or otherwise, in the Purchaser its right, title and interest in and to the Purchased Assets and the Executory Contracts, subject to the provisions of the Agreement.

53.    **Retention of Jurisdiction.** This Bankruptcy Court shall retain jurisdiction to enforce the terms and provisions of this Order, the Bid Procedures Order, and the Agreement (including, without limitation, all documents and instruments executed in connection with the Closing) in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assumed Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of any and all Liens (except Assumed Liabilities).

54.    **Report of Sale.** As soon as practicable after the Closing, the Debtor shall file a report of sale in accordance with Bankruptcy Rule 6004(f)(1).

55.    **Governing Terms.** Unless otherwise provided herein, to the extent this Order is inconsistent with the Bid Procedures Order or any other prior order or pleading in this Bankruptcy Case, or the terms of the Agreement (including all ancillary documents executed in connection with such agreements), this Order shall govern.

56.    **Headings.** The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

[END OF ORDER]

Dated: July 29th, 2019
Wilmington, Delaware

JOHN T. DORSEY
UNITED STATES BANKRUPTCY JUDGE